# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**BRENT EDWARD CRUMMEY**,

　　　　*Plaintiff*,

v.

**SOCIAL SECURITY ADMINISTRATION**,

　　　　*Defendant.*

Civil Action No. 10-01560 (CKK)

## MEMORANDUM OPINION
(June 30, 2011)

> **trust,** *n.* (15c) . . . . The right, enforceable solely in equity, to the beneficial enjoyment of property to which another person holds the legal title; a property interest held by one person (the *trustee*) at the request of another (the *settlor*) for the benefit of a third party (the *beneficiary*).
>
> BLACK'S LAW DICTIONARY 1647 (9th ed. 2009).

Plaintiff Brent Edward Crummey ("Crummey") has a theory. He believes that the Social Security Administration (the "SSA") created a trust, which he calls BRENT E. CRUMMEY (the "Trust"), when it assigned him a Social Security Number ("SSN") and a Social Security Card ("SSC") over thirty years ago. Crummey believes that the Trust is a legal entity in its own right and contends that he merely lends it "consciousness" and "physical capacity." Based on this theory, Crummey decided to draft an agreement designed to reflect the alleged creation of the Trust (the "Trust Agreement") and, over the years, Crummey has repeatedly tried to get the SSA to add a copy of the Trust Agreement to its official records. The SSA has consistently rejected Crummey's theory, and along with it, Crummey's several requests for amendment. The matter comes to a head in this action, which Crummey has brought against the SSA under the Privacy

Act, 5 U.S.C. § 552a, and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Crummey contends that the SSA violated these statutes by refusing to amend some of its records and by failing to provide him access to others at his request.

Presently before the Court is the SSA's [9] Motion to Dismiss or, in the Alternative, for Summary Judgment ("Motion for Summary Judgment"), which Crummey has opposed.  Also before the Court are Crummey's [14] Motion to File a Surreply and his [19] Second Motion for Judicial Notice, in which Crummey asks this Court to consider various supplemental materials in further opposition to the SSA's Motion for Summary Judgment.  Upon a searching review of the parties' submissions, the relevant authorities, and the record as a whole, the SSA's Motion for Summary Judgment will be granted, Crummey's Motion to File a Surreply will be denied, Crummey's Second Motion for Judicial Notice will be granted-in-part and denied-in-part, and this action will be dismissed.  Briefly stated, the Court concludes that the SSA properly denied each of Crummey's requests for amendment and that Crummey's requests for access are moot because the SSA has produced all responsive records in its possession, custody, or control.

## I.  PRELIMINARY MATTERS

Although styled in the alternative as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,[1] the SSA's motion turns upon the consideration of materials outside the scope of the pleadings.  In the course of briefing the motion, both parties effectively treat the motion as one for summary judgment.  For his part, Crummey does not suggest that he has been deprived "a reasonable opportunity to present all the

---

[1]  On occasion, the SSA's motion erroneously cites to Rule 12(b)(1), which concerns this Court's subject matter jurisdiction, but the contents of the SSA's motion make it clear that it intended to bring the motion under Rule 12(b)(6).

material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Indeed, in opposition to the

SSA's motion, Crummey has introduced, and relies heavily upon, materials outside the scope of

the pleadings. Accordingly, the Court shall treat the motion solely as one for summary judgment.

## II. BACKGROUND

This action has its origins in Crummey's efforts to have the SSA add a document to one

of its most important record systems—the Master Files of the Social Security Number (SSN)

Holders and SSN Applications (the "Master Files"). Briefly stated, the Master Files contain all

the information that the SSA receives on applications for SSNs (name, date and place of birth,

sex, etc.), as well as other data elements directed towards establishing the identity of individuals

assigned SSNs. *See* Notice of Proposed Routine Use, 75 Fed. Reg. 82,121, 82,123 (Dec. 29,

2010). The touchstone for assigning SSNs, and by extension the fundamental underpinning of

the Master Files, is "true identity." *See* 42 U.S.C. § 405(c)(2)(B)(ii); 20 C.F.R. §§ 422.103(c)(1),

422.107(a), 422.110(a).

### A. The Trust Agreement

Crummey believes that the SSA created the Trust when it assigned him an SSN and SSC

on or about October 17, 1976. To reflect this, Crummey drafted the Trust Agreement. *See* Decl.

of Dawn S. Wiggins ("Wiggins Decl."), ECF No. [9-1], Ex. A. Styled as an agreement between

the SSA and the Trust, with Crummey identified as the trustee, it provides:

> ORIGIN. This Trust was originally created, by the Social Security
> Administration . . . when SSA presented property, belonging to the
> United States Government, to the person SSA intended as the one that
> would lend consciousness and physical capacity to the Trust's trustee
> capacity . . . ; thus, the Trust was created by the acceptance of said
> property, the Social Security Card (hereinafter "SSC"). Printed upon
> the SSC was the Trust's name and Social Security Number
> (hereinafter "SSN"), followed by a place for the Trust's signature.

* * *

TRUSTEE. This Trust was created with a name that sounds nearly or exactly like the name of the child of God, who by covenant to obey the Law of Consecration only has the capacity of a Steward in the Kingdom of Israel as exemplified in a controlling <u>Instrument of Acknowledgment</u>. This Trust is neither said child nor said stewardship and in no ways acts as an alter ego or nominee of either. However, in accord with the SSA's assignment of this Trust's trustee capacity, through said Instrument of Acknowledgment said child lends consciousness and physical capacity to the Kingdom of Israel, which consciousness and physical capacity is subsequently borrowed by the Trust's trustee capacity to facilitate the Trust's ability to function in accord with the Trust's creation, which is exemplified in this Trust Indenture.

* * *

SOCIAL SECURITY NUMBER (SSN): The Creator assigned the SSN to distinguish this Trust from any other person of a same or similar name. Where the names of the Trust and said child are so similar as to sound identical and are only distinguishable by punctuation and or capitalization in spelling, the SSN so assigned, and or any other respective Taxpayer Identification Number (TIN), must be used to designate: tax payments, ownership and/or acquisition of assets, accounts and/or property held separately by The Trust.

* * *

VERIFICATION: This instant instrument (hereinafter "Trust Indenture") acknowledges, verifies and secures the nature of the relationship SSA created between the parties listed herein. This Trust Indenture was generated by the Trust (named above) and presented (minus said Schedules) to SSA with a Request for Amendment to SSA's records for this taxpayer (said Trust) to verify the facts of the Trust's creation and existence as related in this formal written Trust Indenture.

*Id.* at 1-2 (notations in original; no alterations made). While dated December 17, 2007, the Trust

Agreement purports to reflect the creation of the Trust thirty years' prior "nunc pro tunc." *Id.* at

2. Crummey's signature appears at the bottom, while the SSA's agreement is stated to be

4

evidenced by "[a]cts of issuing the Trust's name and SSN[,] distributing the Social Security Card to be so held in trust, maintaining [an] open accounting under said SSN, accepting and distributing funds in regard to the same, **amending the record** or by tacit admission to the same." *Id.* (bold in original).

### B.    *Crummey's Requests for Amendment*

Over the years, Crummey has repeatedly tried to get the SSA to add a copy of the Trust Agreement to its Master Files.[2] Crummey contends that he mailed the first of his three formal written requests for amendment to the SSA on August 17, 2007, the second on December 17,

---

[2] The reasons for Crummey's efforts are not altogether clear from the record. At one point, Crummey claims that the events of September 11, 2001, led him to be "concerned" about the government's use of SSNs. *See* Pl.'s Mem. in Supp. of Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss, or in the Alternative, for Summ. J. ("Pl.'s MSJ Opp'n"), ECF No. [11], at 2. Meanwhile, public records reflect that Crummey was indicted in the United States District Court for the Southern District of Texas for presenting several false claims for tax returns. *See* Indictment, *United States v. Crummey*, Criminal Action No. 4:10-cr-00315 (S.D. Tex. May 17, 2010), ECF No. [1]. When Crummey sought to dismiss the indictment, he apparently attempted to use the Trust Agreement as part of his defense. *See* Def.'s Mot. to Dismiss, Criminal Action No. 4:10-cr-00315 (S.D. Tex. Sept. 28, 2010), ECF No. [66]. Specifically, Crummey argued that the Trust Agreement "proves the SSA admits to creating a trust, assigning it a name similar to [his] and assigning it the social security number to uniquely distinguish that trust from any other persons (including, but not limited to, him)." *Id.* at 2. That argument was rebuffed by the district court, *see* Min. Entry, *United States v. Crummey*, Criminal Action No. 4:10-cr-00315 (S.D. Tex. Sept. 28, 2010), ECF No. [67], and a jury found Crummey guilty on six counts of presenting false claims in violation of 18 U.S.C. § 287, *see* Verdict Form, *United States v. Crummey*, Criminal Action No. 4:10-cr-00315 (S.D. Tex. Sept. 29, 2010), ECF No. [75]. According to Crummey, his "theory of defense in his criminal trial was not allowed to be determined by the jury because the jury was prohibited from receiving any instructions pertaining to said defense." Pl.'s Stmt. of Disputed Material Facts in Support of Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss, or in the Alternative, for Summ. J. ("Pl.'s MSJ Stmt."), ECF No. [11], ¶ 15. Whatever the case may be, the reasons behind Crummey's requests for amendment are largely immaterial for purposes of resolving the pending motions.

2007, and the third on March 3, 2009. *See* Verified Compl. ("Compl."), ECF No. [1], at 2[3]; Pl.'s

MSJ Stmt. ¶¶ 2-4; Decl. of Brent Edward Crummey ("Crummey Decl."), ECF No. [11-2], ¶ 13.

Each request asked the SSA to amend its records to add the Trust Agreement to the SSA's

Master Files, or to somehow incorporate its contents therein. *See* Pl.'s MSJ Stmt. ¶ 5.[4]

    The SSA has no record of receiving any of these three requests. *See* Wiggins Decl. ¶¶ 18-

19, 22. While Crummey points to mailing receipts that he claims correspond to each request,[5]

the receipts indicate that the requests were all mailed to this address:

> Social Security Commissioner
> SSI Administration
> 1500 Woodlawn Drive
> Baltimore, MD 21241

Crummey Decl. Ex. 3. Regulations, meanwhile, expressly provide that any request to amend the

SSA's Master Files should be directed to this address:

> Director, Division of Enumeration Verification and Death Alerts
> Office of Earnings, Enumeration, and Administrative Systems
> Social Security Administration
> 6401 Security Boulevard
> Baltimore, MD 21235

---

[3] Because the paragraphs in Crummey's Complaint are not sequentially numbered, the Court will refer to the page numbers. However, because the Complaint is not paginated, the Court will refer to the page numbers generated by the Court's CM-ECF System.

[4] Because neither party has actually introduced the written requests into the record, the Court cannot say with certitude how the requests were worded. However, the Court will assume that Crummey requested that the SSA add the Trust Agreement itself in the Master Files or, alternatively, to somehow incorporate the information contained therein.

[5] Although Crummey claims otherwise, the referenced exhibit does not actually include a mailing receipt for a request dated August 17, 2007. Nonetheless, for purposes of resolving the pending motions, the Court will assume that a similar mailing receipt exists. Because Crummey concedes that this request was sent to the same address as the others, whether or not a mailing receipt exists for this request is, for reasons to be explained shortly, immaterial.

20 C.F.R. § 401.65(a); Notice of Proposed Routine Use, 75 Fed. Reg. 82,121, 82,126 (Dec. 29, 2010).  Despite this disparity, the SSA has a general policy favoring the rerouting of requests from one office to another.  *See* Crummey Decl. Ex. 2.[6]

### C. Crummey's Requests for Access

In addition to his three requests for amendment, Crummey has made a series of requests, some in writing and others in person, through which he sought access to certain records claimed to be in the SSA's possession, custody, or control.  Crummey claims that he made these requests over a period spanning more than a year, beginning on or about February 20, 2009 and concluding on or about July 29, 2010.  *See* Compl. at 2; Pl.'s MSJ Opp'n at 7-9; Pl.'s MSJ Stmt. ¶¶ 6-7, 23, 25; Crummey Decl. ¶¶ 21, 24, 27, 29, 35.[7]  Through these requests, Crummey sought the following:

• A copy of his original SSN application, referred to as an "SS-5";

---

[6]  It is unclear whether this policy was in effect at the time Crummey made his requests for amendment, but for purposes of resolving the pending motions, the Court will assume this to be the case.

[7]  Crummey's papers are, unfortunately, very far from the model of clarity in delineating precisely when each of the requests were allegedly sent and in what form.  In the Complaint, he describes only a written request dated February 20, 2009, an attempted in-person visit to the SSA's offices in Baltimore, Maryland, on or about July 29, 2009, and an unspecified number of "other formal written requests for copies of [the SSA's] records."  Compl. at 2-3.  In subsequent papers, Crummey alleges that he sent written requests on or about July 23, 2009, and on or about June 24, 2010, and made another attempted in-person visit, this time to the SSA's offices in Phoenix, Arizona, on or about March 3, 2009.  *See* Pl.'s MSJ Opp'n at 7-9; Pl.'s MSJ Stmt. ¶¶ 6-7, 23, 25; Crummey Decl. ¶¶ 21, 24, 27, 29, 35.  At least one of these requests appears to be, in actuality, a subpoena issued in the aforementioned criminal action.  *See* Wiggins Decl. Ex. J.  Of these various requests, the SSA has a record of receiving only a written request for records dated January 18, 2010 and the subpoena seeking essentially the same records dated June 24, 2010.  *See* Wiggins Decl. ¶¶ 3, 11 & Exs. A, J.  The SSA has copies of some of Crummey's other requests because they were attached as exhibits to correspondence that was actually received.

- • A copy of his original SSC;

- • A copy of the Trust Agreement;

- • Copies of each of his prior requests; and

- • Copies of the SSA's responses to his prior requests.

*See* Pl.'s MSJ Opp'n at 6; Pl.'s MSJ Stmt. ¶ 16; Wiggins Decl. ¶ 3, Exs. A, C-D, J, M, & O. On September 2, 2010, the SSA produced to Crummey certified copies of records responsive to his requests. *See* Wiggins Decl. ¶ 16 & Ex. O; Decl. of Dawn S. Wiggins ("Suppl. Wiggins Decl."), ECF No. [13-1], ¶ 5. On September 9, 2010, the SSA produced to Crummey a second set of certified copies. *See* Suppl. Wiggins Decl. ¶¶ 6-7. Crummey maintains that the SSA's productions were insufficient because some records were missing and others were of poor quality.

### B.    *Procedural History*

Crummey, who is proceeding *pro se*, commenced this action on September 15, 2010. *See* Compl. Crummey describes himself as "the man who lends consciousness and physical capacity to the Social Security Account Number Card" assigned to him by the SSA. *Id.* at 1. Before this Court, Crummey claims that the SSA violated the Privacy Act and/or FOIA by denying his requests to amend the SSA's Master Files to include a copy of the Trust Agreement and by failing to respond in full to his requests for access to records. *Id.* at 2-3.

On February 18, 2011, the SSA filed its Motion for Summary Judgment. *See* Def.'s Mem. in Supp. of its Mot. to Dismiss or, in the Alternative, for Summ. J. ("Def.'s MSJ Mem."), ECF No. [9]. Even though the notice accompanying the SSA's motion did the same, the Court advised Crummey of his obligation to respond to the SSA's motion. *See* Order (Feb. 22, 2011),

ECF No. [10], at 1-2 (citing *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988); *Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992)). On March 15, 2011, Crummey filed his opposition. *See* Pl.'s MSJ Opp'n. On March 29, 2011, the SSA filed a reply. *See* Def.'s Reply in Supp. of its Mot. to Dismiss or, in the Alternative, for Summ. J. ("Def.'s MSJ Reply"), ECF No. [13]. The SSA's Motion for Summary Judgment was at that point fully briefed and ripe for adjudication.

On April 8, 2011, Crummey filed his Motion to File a Surreply, along with a proposed surreply and an accompanying declaration. *See* Pl.'s Mot. to File Surreply ("Pl.'s MFS Mem."), ECF No. [14]; Pl.'s Surreply to Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. ("Pl.'s Proposed MSJ Surreply"), ECF No. [14-2]; Second Decl. of Brent Edward Crummey ("Proposed Suppl. Crummey Decl."), ECF No. [14-2]. On April 25, 2011, the SSA filed an opposition. *See* Def.'s Opp'n to Pl.'s Surreply, ECF No. [16]. Crummey never filed a reply, timely or untimely. The motion is therefore fully briefed and ripe for adjudication.

On May 5, 2011, Crummey filed a document that he styled as a "First Motion for Judicial Notice," in which he attempted to supplement his arguments in opposition to the SSA's Motion for Summary Judgment. *See* Pl.'s First Mot. for Judicial Notice, ECF No. [17]. However, on May 23, 2011, after the SSA had filed an opposition to the motion, Crummey asked this Court to strike his motion from the record, claiming that he "recognized the errors in style and presentment of facts and law for which [he] sought this Court to take judicial notice." Pl.'s Mot. to Strike Pl.'s First Mot. for Judicial Notice, ECF No. [20]. On May 31, 2011, the Court granted Crummey's request and ordered that his "First Motion for Judicial Notice" be stricken from the record. *See* Order (May 31, 2011), ECF No. [21].

Undeterred, on May 23, 2011, Crummey filed a document that he styled as a "Second

Motion for Judicial Notice," in which he again attempted to supplement his arguments in opposition to the SSA's Motion for Summary Judgment. *See* Pl.'s Second Mot. for Judicial Notice ("Pl.'s MJN$_2$ Mem."), ECF No. [19]. On June 3, 2011, the SSA filed a partial opposition. *See* Def.'s Opp'n in Part to Pl.'s Second Mot. for Judicial Notice ("Def.'s MJN$_2$ Opp'n"), ECF No. [22]. Crummey never filed a reply, timely or untimely. The motion is therefore fully briefed and ripe for adjudication.

### III.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] . . . is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact, and therefore "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment.

*Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in its favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted," *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).

While "[a]ll pleadings shall be so construed as to do substantial justice," Fed. R. Civ. P. 8(f), pleadings filed by a party proceeding *pro se* must be "liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quotation marks omitted). For example, where a *pro se* party has filed multiple submissions, the district court must generally consider those filings together and as a whole. *See Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir.

1999); *Sieverding v. U.S. Dep't of Justice*, 693 F. Supp. 2d 93, 101 n.2 (D.D.C. 2010). However, even with the liberality afforded *pro se* pleadings, the district court "need not accept inferences unsupported by the facts alleged in the complaint or legal conclusions cast in the form of factual allegations." *Kaemmerling v. Lappin*, 553 F.3d 669, 667 (D.C. Cir. 2008) (quotation marks omitted).

## IV. DISCUSSION

The Court's discussion here is organized according to the three motions currently pending before the Court: Part IV.A addresses the SSA's [9] Motion for Summary Judgment; Part IV.B addresses Crummey's [14] Motion to File a Surreply; and Part IV.C addresses Crummey's [19] Second Motion for Judicial Notice.

### A.    *The SSA's Motion for Summary Judgment*

The Court's discussion of the SSA's [9] Motion for Summary Judgment is organized into two parts: Part IV.A.1 addresses Crummey's requests for amendment; and Part IV.A.2 addresses Crummey's requests for access.

### 1.    Crummey's Requests for Amendment

Under the Privacy Act, an agency must "maintain all records which are used by the agency in making any determination about any individual with such accuracy . . . and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). If an individual believes that a record pertaining to him is not "accurate . . . or complete," he may "request amendment of [the] record." *Id.* § 552a(d)(2). If the request is denied, he may seek *de novo* judicial review. *Skinner v. U.S. Dep't of Justice*, 584 F.3d 1093, 1096 (D.C. Cir. 2009) (citing 5 U.S.C. § 552(g)(1)(A), (g)(2)(A)), *cert. denied*, __ U.S. __, 131

S. Ct. 72 (2010). In that eventuality, the reviewing court must undertake "a fresh, independent determination of 'the matter' at stake." *Doe v. United States*, 821 F.2d 694, 697-98 (D.C. Cir. 1987) (*en banc*).

In this case, Crummey claims that the SSA improperly denied his August 17, 2007, December 17, 2007, and March 3, 2007 requests for amendment, each of which requested that the SSA include a copy of the Trust Agreement in its Master Files. *See* Compl. at 3 (citing 5 U.S.C. § 552a(d)(2), (e)(5), (g)). For at least three reasons, any one of which is sufficient to warrant dismissal on its own, Crummey's position is without merit.

### i. Crummey Has Failed to Show that the SSA's Records Are Inaccurate or Incomplete

Under the Privacy Act, an agency need only maintain records "with such accuracy . . . and completeness as is reasonably necessary to assure fairness." 5 U.S.C. § 552a(e)(5). In this case, Crummey has failed to present even a scintilla of competent evidence suggesting that the SSA's records are, in actuality, materially inaccurate or incomplete. Indeed, in order to reach that conclusion, the fact-finder would first have to accept two premises, neither of which is tenable.

First, the fact-finder would have to accept that the SSA in fact created the Trust by assigning Crummey an SSN and SSC. When this same contention was last presented to this Court, it was resoundingly rejected. *See Van De Berg v. Social Sec. Admin.*, 254 F.R.D. 144, 146-47 (D.D.C. 2008) (describing plaintiff's argument that the SSA created a trust that borrowed his consciousness and physical capacity when it provided him a social security card as "clearly baseless" and "frivolous"), *aff'd*, No. 08-5528, 2009 WL 2568738 (D.C. Cir. Apr. 28, 2009) (*per curiam*), *cert. denied*, __ U.S. __, 130 S. Ct. 1146 (2010). Other courts have done the same. *See, e.g., Lizalek v. Comm'r of Internal Revenue*, 97 T.C.M. (CCH) 1639, 2009 WL 1530160, at *4

(T.C. June 1, 2009); *Bond v. Comm'r of Revenue*, 691 N.W.2d 831, 837-38 (Minn.), *cert. denied*, 545 U.S. 1116 (2005). The reason is simple: the SSA does not manifest the intention required to create a trust merely by assigning individuals an SSN and SSC. *See* Restatement (Second) of Trusts §§ 23, 25 (1959).

Second, even assuming, *arguendo*, that a trust relationship was somehow created when the SSA assigned Crummey an SSN and SSC, the fact-finder would have to accept a further factual premise before concluding that the SSA's records are inaccurate or incomplete. However, the touchstone for assigning SSNs, and by extension the fundamental underpinning of the Master Files, is "true identity." *See* 42 U.S.C. § 405(c)(2)(B)(ii); 20 C.F.R. §§ 422.103(c)(1), 422.107(a), 422.110(a). Accordingly, the fact-finder would have to conclude that the Trust, and not Crummey, is the true and actual holder of the SSN. However, this conclusion is foreclosed by the statutory and regulatory scheme, which makes it clear that only natural persons are eligible to be assigned an SSN. *See* 42 U.S.C. § 405(c)(2); 20 C.F.R. §§ 422.103(a), (b)(1), (d), 422.104(a); 26 C.F.R. § 31.6011(b)-2(a)(ii)-(iii).

Without concluding both that the SSA created the Trust and that the Trust was the actual holder of the SSN, there are no grounds for concluding that the SSA's records, which associate the SSN with Crummey, are inaccurate or incomplete. Therefore, based on the record created by the parties, there can be no genuine dispute that the SSA has maintained its records "with the accuracy necessary to assure fairness." *Doe*, 821 F.2d at 699 n.13. On this basis alone, the SSA is entitled to summary judgment in connection with Crummey's requests for amendment.

### ii. The Trust Document Does Not Include Information that is Relevant and Necessary to Accomplish a Purpose of the SSA

An agency may "maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President." 5 U.S.C. § 552a(e)(1). The SSA uses SSNs to maintain accurate wage earnings and income records in connection with the administration of social security programs. *See* 42 U.S.C. § 405(c). SSNs are also used to verify identity, ascertain tax liability, determine eligibility for public benefits, and establish employment authorization. *Jones v. Sullivan*, 938 F.2d 801, 803 (7th Cir. 1991). To effectuate these ends, SSNs, and by extension the information contained in the Master Files, are oriented towards establishing an individual's "true identity." *See* 42 U.S.C. § 405(c)(2)(B)(ii); 20 C.F.R. §§ 422.103(c)(1), 422.107(a), 422.110(a). The concept of "true identity" is fundamental to achieving all these ends. Indeed, the government's interest in using SSNs as unique identifiers for individuals has been described as "compelling." *Callahan v. Woods*, 736 F.2d 1269, 1274 (9th Cir. 1984). Amending the Master Files to include a copy of the Trust Agreement, or to reflect its contents, would require the SSA to maintain information about Crummey that is neither relevant nor necessary to accomplishing any purpose of the SSA. If anything, it would undermine the fundamental premise underlying the SSA's SSN-system. Because the SSA is not permitted to retain information that is not necessary and relevant to a valid purpose, the SSA is entitled to summary judgment in connection with Crummey's requests for amendment on this separate, independent ground.

### iii. The Information in the Trust Agreement Does Not Correspond to Any Record Maintained in the SSA's Master Files

An agency is not required to add information to its systems of records just because an individual has requested as much. *See Manuel v. Veterans Admin. Hosp.*, 857 F.2d 1112, 1118 (6th Cir. 1988), *cert. denied*, 489 U.S. 1055 (1989); *Wren v. Heckler*, 744 F.2d 86, 89 (10th Cir. 1984). Rather, an individual's request for amendment must relate to an existing "record" that is maintained within one of the agency's "system[s] of records." 5 U.S.C. § 552a(d)(2). A "record" is defined as "any item, collection, or grouping of information" and a "system of records" is defined as "a group of records . . . from which information is retrieved by . . . [an] identifying particular assigned to the individual." *Id.* § 552a(a)(4)-(5).

In this case, it is undisputed that the only "system of records" relevant to Crummey's requests for amendment is the SSA's Master Files, as Crummey has steadfastly insisted that he has a right to require inclusion of the Trust Agreement in the SSA's Master Files. Therefore, the only remaining question is whether the Trust Agreement or its contents correspond to a "record" in the SSA's Master Files—in other words, whether it corresponds to an "item, collection, or grouping of information" in the Master Files. That question must be answered in the negative.

The following description identifies the universe of information contained within the SSA's Master Files:

> This system contains all the information [the SSA] receive[s] on the applications for SSNs (e.g., name, date and place of birth, sex, both parents' names, and race/ethnicity data). If the application for an SSN is for a person under the age of 18, [the SSA] also maintain[s] the SSNs of the parents. The system also contains:
>
> • Changes in the information on the applications the SSN holders submit;

- Information from applications supported by evidence [the SSA] suspect[s] or determine[s] to be fraudulent, along with the mailing address of the persons who filed such applications and descriptions of the documentation they submitted;

- Cross-references when multiple numbers have been issued to the same person;

- A form code that identifies the Form SS-5 (Application for a Social Security Card Number) as the application the person used for the initial issuance of an SSN, or for changing the identifying information (e.g., a code indicating original issuance of the SSN, or that [the SSA] assigned the person's SSN through [its] enumeration at birth program);

- A citizenship code that identifies types of questionable data or special circumstances concerning an application for an SSN (e.g., false identity; illegal alien; scrambled earnings);

- An indication that an SSN was assigned based on harassment, abuse, or life endangerment; and

- An indication that a person has filed a benefit claim under a particular SSN.

Notice of Proposed Routine Use, 75 Fed. Reg. 82,121, 82,123 (Dec. 29, 2010). None of the information set forth in the Trust Agreement falls within this universe. To the extent that it does (*i.e.*, Crummey's name and SSN), the SSA's Master Files already reflect that information. Indeed, of the categories of information included in the Master Files, the only arguably relevant candidate here is "[i]nformation from applications supported by evidence that [the SSA] suspect[s] or determine[s] to be fraudulent." *Id.* Obviously, Crummey does not suggest that the SSA should have amended its Master Files to reflect the apparently fraudulent nature of the Trust Agreement. Even if he did, that category only pertains to information "from applications," something that does not apply to the Trust Agreement. In short, the Trust Agreement and the information contained therein do not correspond to an "item, collection, or grouping" of

17

information in the Master Files. *Cf.* Wiggins Decl. ¶ 9 (declaring that the Trust Agreement does not pertain to a "data element" in the Master Files).

Crummey purports to dispute this fact on the basis that a friend of his, Alexander Doak ("Doak"), allegedly managed to get the SSA to include a copy of an analogous agreement, one pertaining to him, in its Master Files. *See* Crummey Decl. ¶¶ 43, 51. Crummey includes with his opposition what he claims is a copy of that agreement, along with a written certification from the SSA indicating that the agreement came from its records. *See id.* Ex. 7. However, contrary to Crummey's assertion, the written certification does not indicate that the agreement was maintained in the SSA's Master Files. Rather, it merely states that the agreement was in the SSA's "custody," without any specification whatsoever as to which system or systems of records from which it might have originated. *Id.* Meanwhile, the SSA has submitted a declaration by the custodian of the records indicating that the agreement produced to Doak was maintained not in its Master Files but its eFOIA system of records.[8] *See* Suppl. Wiggins Decl. ¶ 4. Indeed, when the SSA produced a copy of the Trust Agreement to Crummey, which was indisputably maintained not in the SSA's Master Files but rather its eFOIA system, it provided an identical written certification. *See* Wiggins Decl. Ex. O. Simply put, the written certification allegedly produced by the SSA to Doak does not evidence that the SSA's Master Files include an "item, collection, or grouping" of information corresponding to the Trust Agreement. It is patently inadequate to create a genuine dispute as to the sort of information the SSA maintains in the

---

[8] The eFOIA records system collects information pertaining to FOIA requests received by the SSA. *See* Notice of Proposed Routine Use, 70 Fed. Reg. 3,571, 3,571 (Jan. 25, 2005).

Master Files.[9]

Based on the record created by the parties, no reasonable fact-finder could conclude that the SSA's Master Files include an "item, collection, or grouping" of information corresponding to the Trust Agreement. As a result, Crummey's requests for amendment did not, as they must, relate to an existing "record" within the SSA's "system of records." 5 U.S.C. § 552a(d)(2). For this separate, independent reason, the SSA is entitled to summary judgment in connection with Crummey's requests for amendment.

### 2.   Crummey's Requests for Access

Under the Privacy Act, an individual may request "access to his record or to any information pertaining to him which is contained in the system" and "have a copy made . . . in a form comprehensible to him." 5 U.S.C. § 552a(d)(1). Similarly, FOIA requires an agency to make "records promptly available to any person" in any "readily reproducible" format upon receiving a request "reasonably describ[ing] such records." *Id.* § 552(a)(3)(A)-(B). In this case, Crummey claims that the SSA violated the Privacy Act and/or FOIA by denying him access to certain records. *See* Compl. at 3 (citing 5 U.S.C. §§ 552(a)(3)(A)-(B), (a)(4)(B), 552a(d)(1), (g)(3)(A)). Specifically, Crummey seeks the following records:

---

[9]   Nor can Crummey remedy this inadequacy merely by declaring that Mona Finch ("Finch"), who is alleged to be an SSA employee, "reassured Doak that the Doak Amendment was stored in the Master Files." Crummey Decl. ¶ 51. This proposition rests on two alleged out-of-court statements, both of which are offered to prove the truth of the matter asserted: the first by Finch to Doak; and the second by Doak to Crummey. *See* Fed. R. Evid. 801(c). Even assuming, *arguendo*, that Finch's alleged statement to Doak was made in the scope of her employment and therefore admissible as a party admission, *see* Fed. R. Evid. 801(d)(2)(D), Doak's statement to Crummey would still be inadmissible hearsay. *See Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) ("[S]heer hearsay . . . counts for nothing on summary judgment.") (quotation marks omitted).

- A copy of his original SSN application, referred to as an SS-5;

- A copy of his original SSC;

- A copy of the Trust Agreement;

- Copies of each of his prior requests; and

- Copies of the SSA's responses to his prior requests.

*See* Pl.'s MSJ Opp'n at 6; Pl.'s MSJ Stmt. ¶ 16; Wiggins Decl. ¶ 3, Exs. A, C-D, J, M, & O.[10]

However, because Crummey has already received all the records responsive to his requests that are in the SSA's possession, custody, or control, his requests for access are moot and the associated relief unavailable. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) ("[H]owever fitful or delayed the release of information . . . may be, once all requested records

---

[10] The Court is aware that Crummey's letter to the SSA dated February 20, 2009, which the SSA has no record of ever receiving, sought multiple copies of some records—specifically, Crummey's original SSN application and the Trust Agreement. *See* Wiggins Decl. ¶ 21 & Ex. A. Meanwhile, in his letter dated January 18, 2010, the first letter requesting access to records that the SSA does have a record of receiving, Crummey requests only one copy of each record. *See id.* ¶ 3 & Ex. A. So far as the Court can tell, once the SSA informed Crummey that it did not maintain a copy of his Trust Agreement in its Master Files, he abandoned his requests to obtain multiple copies of certain records. Before this Court, Crummey has never suggested that the SSA has failed to produce a sufficient number of records (at least not with any meaningful measure of clarity). Rather, his complaints have focused on the quality of the documents that the SSA has produced and his allegations that some records are missing altogether. Regardless, according to the record before the Court, the only fee that Crummey has ever paid for his myriad requests was in the amount of $50.00. *See id.* Ex. N. While that amount was actually slightly less than what was required to cover the requisite fees for the records and certifications produced by the SSA on September 2, 2010, the SSA nonetheless accepted the amount and elected not to seek full payment from Crummey. *See id.* ¶¶ 16-17. Moreover, on September 9, 2010, the SSA provided Crummey with another full set of certified records upon his request, apparently free of charge. *See* Suppl. Wiggins Decl. ¶¶ 6-7. Which is just to say that, even if Crummey had sought additional copies of certain records, he has not provided the requisite payment. For its part, the SSA has no objection to providing Crummey with additional certified copies of records in its possession, custody, or control provided Crummey agrees to pay the appropriate fees. *See* Def.'s Stmt. of Material Facts Not in Dispute, ECF No. [9], ¶ 26. While Crummey is certainly free to take the SSA up on its offer, that matter is not properly before the Court.

are surrendered, federal courts have no further statutory function to perform."); *see also Boyd v. Chertoff*, 540 F. Supp. 2d 210, 216 (D.D.C. 2008). On September 2, 2010, the SSA provided Crummey with certified copies of his original SSN application, his prior requests, and the SSA's responses to those requests. *See* Wiggins Decl. ¶ 16 & Ex. O; Suppl. Wiggins Decl. ¶ 5. True, the SSA did not produce a copy of Crummey's original SSC, but for a good reason: the SSA does not maintain copies of SSCs after they are issued to individuals. *See* Wiggins Decl. ¶ 12. The SSA also produced a copy of the Trust Agreement because it had been retained in the SSA's eFOIA system as an attachment to one of Crummey's written requests.[11] *See id.* Ex. O. On September 9, 2009, the SSA produced a second certified set of its production. *See* Suppl. Wiggins Decl. ¶¶ 6-7.

Crummey claims that the SSA's productions are insufficient because the SSA failed to produce copies of all of the many prior requests he allegedly made over the years. However, even assuming, *arguendo*, that Crummey sent, and the SSA actually received, each of the several requests identified at one point or another in his pleadings, that mere fact would not render the SSA's productions somehow inadequate. In this case, the SSA has submitted sworn declarations uncontradicted by competent evidence demonstrating that it searched the relevant record systems and produced the requests and responses that were located. *See* Wiggins Decl. ¶¶ 8-10, 16, 19-22; Suppl. Wiggins Decl. ¶¶ 5-7. While Crummey may personally dispute those assertions,[12]

---

[11] The SSA did not produce a copy of the Trust Agreement from its Master Files, as no copy is retained in the Master Files. *See supra* Part IV.A.1.

[12] To be clear, Crummey disputes the SSA's contention that it has produced all the records responsive to his requests; he has never directly challenged the adequacy of the SSA's search for records before this Court. In any event, because the adequacy of a search "is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry

"[a]gency affidavits are accorded a presumption of good faith" in this context and cannot be rebutted by speculation of the sort proffered by Crummey in this case. *SafeCard Servs., Inc. v. Secs. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Significantly, the SSA's search covered those sources that could be "reasonably expected" to produce the very information sought by Crummey's requests. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Specifically, the SSA searched its eFOIA system, which collects, among other things, "requests from individuals . . . and copies of [the SSA's] replies to those requests," Notice of Proposed Routine Use, 70 Fed. Reg. 3,571, 3,571 (Jan. 25, 2005), and the record stands uncontradicted by any competent evidence that the SSA has produced all the records that it was able to locate through its efforts. Viewed from a slightly different perspective, an agency is not required to document an "epic search for the requested records." *Perry*, 684 F.2d at 127. Rather, affidavits that explain in "reasonable detail" the scope and method employed by the agency will "suffice to demonstrate compliance." *Id.* In this case, the SSA has come forward with sufficient evidence showing that it has produced all responsive records in its possession, custody, or control located after a reasonably diligent search. Because an agency is not required to produce records that are not in its possession, custody, or control, *see Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 152 (1980), Crummey's allegations that some records are missing simply do not preclude a finding that the SSA has discharged its statutory obligations in this case.

---

out the search," *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003), "the [mere] fact that a particular document was not found does not demonstrate the inadequacy of a search," *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir.), *cert. denied*, 552 U.S. 1007 (2007). Here, the SSA's efforts evince, at a bare minimum, that it made a good faith, informed, and reasonable effort to locate the requested records. Crummey's speculation that certain documents simply must exist does not suffice to raise "substantial doubt" as to the reasonableness of the SSA's search for records. *Iturralde*, 315 F.3d at 315.

Similarly, Crummey's contention that the SSA provided him with "poor quality photocopies," Pl.'s MSJ Stmt. ¶ 20, does not suffice to preclude summary judgment in the SSA's favor. While Crummey is correct that a requester is generally entitled to receive legible copies of responsive records, *see Grove v. Dep't of Justice*, 802 F. Supp. 506, 519 (D.D.C. 1992); *Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health & Human Servs.*, 844 F. Supp. 770, 779 (D.D.C. 1993), his allegations are insufficient for at least three reasons. First, the district court is rarely the proper "forum for an . . . initial assertion of non-compliance on the grounds that [requested] documents are illegible." *Peddie v. Internal Revenue Serv.*, Civil Action No. 95-2255 (PLF), 1996 WL 571788, at *4 (D.D.C. July 31, 1996), *aff'd*, No. 96-5226, 1997 WL 411706 (D.C. Cir. June 19, 1997) (*per curiam*). In this case, Crummey has not shown that he raised this issue in a timely manner before the SSA. Second, the SSA's productions were accompanied by written certifications attesting that the copies produced to Crummey were the "true and complete copies" of the records in the SSA's possession, custody, or control. *See* Wiggins Decl. Ex. O. Crummey has failed to come forward with anything beyond his own speculation and conclusory allegations that would suggest that the SSA produced anything other than the best available records in its possession, custody, or control. Third, and finally, while some of the records annexed to the parties' submissions may not be of the greatest quality, an entirely unsurprising fact given that some of the records produced by the SSA are facsimiles of facsimiles of documents that are over thirty years old, they are not illegible.

For the reasons set forth above, the SSA's Motion for Summary Judgment will be granted in its entirety.

### B.      Crummey's Motion to File a Surreply

Shortly after the SSA's Motion for Summary Judgment had been fully briefed, Crummey filed his [14] Motion to File a Surreply, which the SSA has opposed.  For the reasons set forth below, the motion will be denied.

The Local Rules of this Court contemplate that there ordinarily will be at most three memoranda associated with any given motion: (i) the movant's opening memorandum; (ii) the non-movant's opposition; and (iii) the movant's reply.  *See* LCvR 7.  Nonetheless, when the non-movant is deprived of the opportunity to contest matters raised for the first time in the movant's reply, the non-movant may seek the district court's leave to file a surreply.  *Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003).  However, surreplies are generally disfavored, *Kifafi v. Hilton Hotels Retirement Plan*, 736 F. Supp. 2d 64, 69 (D.D.C. 2010), and the determination of whether to grant or deny leave is entrusted to the sound discretion of the district court, *Akers v. Beal Bank*, 760 F. Supp. 2d 1, 2 (D.D.C. 2011).  When a *pro se* litigant seeks leave to file a surreply, the district court should remain cognizant that parties proceeding without legal representation are entitled to a certain amount of solicitude in the conduct of litigation, but also that such solicitude is not limitless and *pro se* litigants are not relieved of their obligation to comply with the applicable rules.  *See Slovinic v. Am. Univ.*, 520 F. Supp. 2d 107, 111 (D.D.C. 2007).

In this case, Crummey identifies two reasons why he believes he should be granted leave to file a surreply.  First, he contends that the SSA "makes several assertions [in its reply] that mischaracterize and/or misconstrue the facts and relevant law raised by Plaintiff in his opposition."  Pl.'s MFS Mem. at 1.  Second, he contends that the SSA "submitted new factual

information . . . claiming that all the records were produced, as far as it possesses them." *Id.* Neither reason is sufficient to warrant granting Crummey the leave requested.

Crummey's first argument in favor of granting leave actually reveals exactly why leave should not be granted in this case. Crummey concedes that the arguments raised by the SSA in its reply are in response to "the facts and relevant law raised by [him] in his opposition." Pl.'s MFS Mem. at 1. That is, he admits that the arguments in the SSA's reply fall within the scope of the matters he raised in opposition. Where the movant's reply does not expand the scope of the issues presented, leave to file a surreply will rarely be appropriate. To the extent the arguments made by the SSA in its reply "mischaracterize and/or misconstrue" Crummey's factual and legal arguments, the Court is more than capable of ascertaining the merits of the parties respective positions on its own. Simply put, a surreply is not a vehicle for rehashing arguments that have already been raised and briefed by the parties. Were that not true, briefing would become an endless pursuit.

Crummey's second argument in favor of granting leave rests on his contention that the SSA "submitted new factual information . . . claiming that all the records were produced, as far as it possesses them." Pl.'s MFS Mem. at 1 (citing Def.'s MSJ Reply at 6-8; Suppl. Wiggins Decl ¶ 6). In support, Crummey points to those portions of the SSA's reply, and the accompanying declaration, where the SSA sets forth its position that Crummey's claims are moot because he has received all the documents to which he is entitled. *See* Def.'s MSJ Reply at 6-8; Suppl. Wiggins Decl. ¶ 4. However, Crummey cannot credibly dispute that this same argument was raised by the SSA in its opening memorandum and that he responded to the argument, at some length, in his opposition. *See* Def.'s MSJ Mem. at 12-13; Pl.'s MSJ Opp'n at 5-6. The

SSA merely revisited the argument in its reply. *See* Def.'s MSJ Reply at 6-8. In so doing, the SSA largely rehashed its prior argument, citing to the evidence submitted with its opening memorandum.[13] *See id.* In so doing, the SSA did not deprive Crummey of a meaningful opportunity to respond to its argument such that might warrant granting leave to file a surreply.

In the final analysis, Crummey has simply failed to show the circumstances that would warrant granting him leave to file a surreply. Meanwhile, the Court's review of Crummey's proposed surreply, and the accompanying declaration, reveal than neither would be helpful to the resolution of the SSA's Motion for Summary Judgment. Even if the Court were to consider these materials, the same result would obtain. In fact, if anything, Crummey's proposed submissions undermine his claimed entitlement to relief. Simply by way of example, Crummey concedes in his proposed surreply that only "supporting documentation to clarify the identity of the person to whom SSA did, in fact, assign the SSN is relevant and necessary for SSA purposes" and that "[t]he Master File disclosures are meant to identify the person to whom SSA assigned an SSN," Proposed MSJ Surreply at 2, concessions which are all but fatal to his requests for

---

[13] The only addition to the SSA's argument on reply was a direct response to a factual allegation raised by Crummey in his opposition. Specifically, in his opposition, Crummey concedes that the SSA produced a set of records to him on September 2, 2010, but proceeds to complain that the records were not properly certified. *See* Pl.'s MSJ Opp'n at 6. In reply, the SSA briefly responds to Crummey's assertion by maintaining that its prior production was properly certified and indicating that, in any event, it promptly produced a second certified copy of the records upon Crummey's request. *See* Def.'s MSJ Reply at 8; Suppl. Wiggins Decl. ¶ 6. While Crummey purports to respond to this in his proposed surreply, *see* Pl.'s Proposed MSJ Surreply at 6; Proposed Suppl. Crummey Decl. ¶¶ 8-9, his conclusory denial of the SSA's factual allegations is insufficient to create a genuine dispute on the matter. *See Ass'n of Flight Attendants-CWA*, 564 F.3d at 465-66. In any event, the parties' dispute is immaterial to the resolution of the SSA's Motion for Summary Judgment, as Crummey's requests for access are moot in either event because the SSA previously produced a certified copy of those same records on September 2, 2010. *See* Wiggins Decl. ¶ 16.

26

amendment. *See supra* Part IV.A.1. Beyond that, Crummey's arguments either retread old ground or interject irrelevant and tangential matters that would not assist the Court in rendering a decision on the SSA's Motion for Summary Judgment. Therefore, and because Crummey has failed to establish the circumstances that would justify granting leave, the Court will, in an exercise of its discretion, deny Crummey's [14] Motion to File a Surreply. In reaching this conclusion, the Court has taken into account Crummey's *pro se* status.

### C. *Crummey's Second Motion for Judicial Notice*

Crummey's [19] Second Motion for Judicial Notice asks this Court to take judicial notice of two policies from the SSA's Program Operations Manual System, a provision of the Privacy Act pertaining to requests for amendment, and case law concerning administrative exhaustion. *See* Pl.'s MJN$_2$ Mem. at 1-2. The SSA opposes Crummey's motion only in part. The SSA does not oppose Crummey's motion insofar as it asks this Court to take into account the existence of the two policies, the provision of the Privacy Act, and the case law concerning administrative exhaustion, but opposes the motion insofar as Crummey seeks to supplement his arguments in opposition to the SSA's Motion for Summary Judgment. *See* Def.'s MJN$_2$ Opp'n at 2.

The motion will be granted in part and denied in part. Specifically, given the absence of opposition on the SSA's part, the motion will be granted insofar as Crummey asks this Court to take into account the materials and authorities cited in his motion. The Court has considered those materials and authorities in the course of evaluating the merits of the SSA's Motion for Summary Judgment, but has found them to be irrelevant and tangential to the issues presented. Meanwhile, the motion will be denied insofar as Crummey asks this Court to take into account the argumentation in his Second Motion for Judicial Notice. In this regard, Crummey's Second

Motion for Judicial Notice is a thinly veiled surreply, but Crummey makes no attempt to establish the circumstances that would justify granting leave to file a surreply. Requests for judicial notice, notices of supplemental authority, and the like, cannot be used as a means for circumventing the showing that is required for securing leave to file a surreply. In this case, Crummey's arguments are all directed towards responding to arguments that were first raised by the SSA in its opening memorandum, meaning that he was not "unable to contest matters presented to the court for the first time in the last scheduled pleading." *Ben-Kotel*, 319 F.3d at 536 (quotation marks omitted). The motion will therefore be denied to the extent Crummey seeks to supplement his arguments in opposition to the SSA's Motion for Summary Judgment. In any event, even if the Court were to consider Crummey's arguments, they would not warrant a different result on the SSA's Motion for Summary Judgment. Just as Crummey's materials and authorities are irrelevant and tangential to the issues presented, so are his arguments.

## V.  CONCLUSION

For the reasons set forth above, the Court will grant the SSA's [9] Motion for Summary Judgment in its entirety. Crummey's [14] Motion to File a Surreply will be denied. Crummey's [19] Second Motion for Judicial Notice will be granted-in-part and denied-in-part; specifically, the motion will be granted insofar as Crummey asks this Court to take into account the materials and authorities cited in his motion, and the motion will be denied to the extent Crummey seeks to supplement his arguments in opposition to the SSA's Motion for Summary Judgment. Finally, this action will be dismissed in its entirety. An appropriate Order accompanies this Memorandum Opinion.

_____
/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge
